IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MCDEVITT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN EXPEDITING COMPANY | : | NO. 15-498 |

## MEMORANDUM

**Padova, J.**                                                                                    **July 30, 2015**

Plaintiff Michael McDevitt brings this employment action against his employer, Defendant American Expediting Company ("AEC"), pursuant to the Family Medical Leave Act ("FMLA" or "the Act"), alleging that AEC denied him benefits under the FMLA and unlawfully terminated him for taking FMLA leave.   AEC has moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Amended Complaint fails to state an FMLA claim upon which relief can be granted because it fails to plausibly allege that McDevitt is an "eligible employee" under the Act.   We held argument on the Motion on July 29, 2015.   For the following reasons, we grant AEC's Motion, but also give McDevitt leave to file a Second Amended Complaint.

## I.      BACKGROUND

The Amended Complaint (the "Complaint") alleges the following facts that are relevant to this Motion.   Plaintiff Michael McDevitt began working as an Account Executive for Defendant AEC's subsidiary, One Hour Messengers, in December 1995 and was later promoted to Operations Manager.   (Am. Compl. ("Compl.") ¶ 9.)   McDevitt worked in AEC's Philadelphia office until 2012, when he was selected by AEC to open and operate a new office in Burbank, California.   (Id. ¶¶ 11, 39.)   McDevitt understood the job in California to be a temporary assignment.   (Id. ¶¶ 12, 39.)   In California, McDevitt was responsible for twenty-five other

workers, but he continued to report to AEC's Philadelphia office, where he remained on the payroll.  (Id. ¶¶ 13-15.)   Additionally, McDevitt maintained residences in both Pennsylvania and California throughout his time in California, and he continued to pay Pennsylvania state taxes. (Id. ¶ 15.)

In March 2014, while still working in the California office, McDevitt requested eight to ten weeks of leave to care for his elderly mother.  (Id. ¶ 16.)   AEC granted this leave, which McDevitt understood to be protected by the FMLA, but AEC neither provided McDevitt with the required FMLA paperwork nor advised him to complete such paperwork.  (Id. ¶¶ 17-19.)   Upon returning to Philadelphia in June 2014, McDevitt continued to work for AEC by phone and e-mail without compensation.  (Id. ¶¶ 21-22, 29.)  Two weeks after McDevitt began his leave, AEC's Vice President Paul Rosenblatt asked McDevitt to return to work in California, but McDevitt requested more time to care for his mother.  (Id. ¶ 23.)  For approximately the next month, various employees repeatedly asked McDevitt for his return date.  (Id. ¶ 24.)   In late July, McDevitt informed AEC that he wished to stay in Philadelphia for the immediate future, and AEC assured him that he had a job in Philadelphia.  (Id. ¶¶ 25-28.)   McDevitt also informed AEC that he would return to California if it was his only option for retaining his job.  (Id. ¶ 26.)   In spite of McDevitt's offer in that regard, in mid-August 2014, AEC told McDevitt that his employment had been terminated due to his family situation and AEC's desire to take the company in another direction.  (Id. ¶ 31.)   Shortly thereafter, AEC announced the hiring of a new Operations Manager for the California office.   (Id. ¶ 32.)

McDevitt filed the instant action on April 21, 2015.  Although the Complaint contains just a single Count, the single Count asserts two separate FMLA claims – one for interference with

McDevitt's FMLA rights and one for retaliation against McDevitt for his exercise of his FMLA rights.[1]   AEC has moved to dismiss the entire Complaint for failure to state a claim upon which relief may be granted.   See Fed. R. Civ. P. 12(b)(6).

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).   We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.   DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).   Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"   Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).   The complaint must contain

---

[1] In an FMLA interference claim, the employee alleges "'that he was entitled to benefits under the FMLA and that he was denied them.'"   Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009) (quoting Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).   In an FMLA retaliation claim, the employee alleges that the employer retaliated against him because he either exercised his rights under the FMLA or opposed a practice that the FMLA makes unlawful. Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 390 (E.D. Pa. 2013) (quoting Reifer v. Colonial Intermediate Unit, 462 F. Supp. 2d 621, 638–39 (M.D. Pa. 2006)).

"'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).   In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.    DISCUSSION

AEC argues that we should dismiss McDevitt's Complaint because it does not allege facts that support the conclusion that McDevitt is an eligible employee under the FMLA (and, thus, that McDevitt is entitled to bring a claim for either interference or retaliation under the Act). McDevitt counters that the Complaint sufficiently alleges that he is an eligible employee and that, in the alternative, the Complaint should not be dismissed because it alleges that AEC should be barred from challenging Plaintiff's eligibility for FMLA benefits under the doctrine of equitable estoppel.

### A.    The FMLA

The FMLA grants up to "12 workweeks of leave during any 12-month period" to certain individuals that it deems "eligible employees," so that such employees may, for example, care for a family member with a serious health condition, and employers are prohibited from interfering with or denying this right.   29 U.S.C. §§ 2612(a), 2615(a).   Because the Act only confers rights

on "eligible employees," only "eligible employees" may ordinarily bring a cause of action for retaliation or interference under the Act.   See Sinacole v. iGate Capital, 287 F. App'x 993, 996 (3d Cir. 2008).   Consequently, in order to state a valid FMLA claim for either interference or retaliation, a complaint must plausibly allege that the plaintiff is an "eligible employee" under the Act.   Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 917 F. Supp. 2d 377, 390-91 (E.D. Pa. 2013) (dismissing a retaliation claim under the FMLA because the complaint did not validly plead that the plaintiff was an "eligible employee"); see also Bowman v. St. Luke's Quakertown Hosp., Civ. A. No. 12-797, 2012 WL 6527402, at *5 (E.D. Pa. Dec. 13, 2012) (holding that a complaint must plausibly allege that the plaintiff was an "eligible employee" to state a cognizable interference claim under the FMLA).   To qualify as an "eligible employee," an employee must be employed at a worksite with at least 50 employees or the employer must employ at least 50 employees within 75 miles of the worksite.   29 U.S.C. § 2611(2)(B)(ii) (the "50/75 Rule").

The FMLA's implementing regulations provide some guidance as to how to determine an employee's worksite.   The regulations state that "[a]n employee's worksite under FMLA will ordinarily be the site the employee reports to or, if none, from which the employee's work is assigned." 29 C.F.R. § 825.111(a).   "For employees with no fixed worksite, e.g., construction workers, transportation workers (e.g., truck drivers, seamen, pilots), salespersons, etc., the worksite is the site to which they are assigned as their home base, from which their work is assigned, or to which they report."[2]   Id. § 825.111(a)(2).   Meanwhile, the regulations also

-----

[2] The regulations provide the following example of the application of the "no fixed worksite" rule:

> If a construction company headquartered in New Jersey opened a construction site in Ohio, and set up a mobile trailer on the construction site as the company's on-site office, the construction

provide that where an employee is jointly employed by two different employers, "the employee's worksite is the primary employer's office from which the employee is assigned or reports, unless the employee has physically worked for at least one year at a facility of a secondary employer, in which case the employee's worksite is that location."   Id. § 825.111(a)(3).   In addition, case law suggests that when an employee has multiple potential worksites, "the 'worksite' location necessarily will turn upon the facts and circumstances of each individual employee."   Podkovich v. Glazer's Distribs. of Iowa, Inc., 446 F. Supp. 2d 982, 1001 (N.D. Iowa 2006) (stating, on summary judgment, that a sales representative's worksite might be either the local office to which

> site in Ohio would be the worksite for any employees hired locally who report to the mobile trailer/company office daily for work assignment, etc.  If the construction company also sent personnel such as job superintendents, foremen, engineers, an office manager, etc. from New Jersey to the job site in Ohio, those workers sent from New Jersey continue to have the headquarters in New Jersey as their worksite.

Id. § 825.111(a)(2).

>       A court in this District has elaborated that:
>
>> In applying this standard [for employees with no fixed worksites], many courts use the following factors: (1) from which location the employee sent work-related communications; (2) which location the employee visited regularly; (3) at which location the employee had a desk; (4) whether there was anything on that desk indicating it belonged to the employee; (5) which location had a telephone number listed for the employee; (6) at which location the employee's voicemail account was located; (7) who conducted initial employee interviews; (8) where secondary or final interviews were conducted; (9) where employee training was done; (10) where personnel records were maintained; (11) where paychecks were issued from; (12) where expense reports were turned in; (13) who directly evaluated the employee's performance; and (14) who was ultimately responsible for creating assignments and monitoring progress.

O'Donnell v. Passport Health Commc'ns, Inc., Civ. A. No. 11-3231, 2013 WL 1482621, at *4 n.2 (E.D. Pa. Apr. 10, 2013) (citing Podkovich v. Glazer's Distribs. of Iowa, Inc., 446 F. Supp. 2d 982, 991 (N.D. Iowa 2006)), aff'd, 561 F. App'x 212 (3d Cir. 2014).

she physically reported or the office from which her supervisor provided assignments and authorization).

**B.**   **Eligible Employee**

AEC argues that the Complaint does not sufficiently allege that McDevitt is an eligible employee under the FMLA because the allegations do not support the conclusion that McDevitt was employed at a worksite that satisfied the 50/75 Rule.   In AEC's view, because the Complaint alleges that McDevitt was physically stationed in California for two-and-a-half years and that, after his termination, his replacement was hired in the California office, it only supports the conclusion that the California office was McDevitt's worksite.   In the alternative, AEC urges us to analogize McDevitt's situation to that of joint employers, consider Philadelphia to be McDevitt's primary employer and California to be his secondary employer, and conclude that California is necessarily McDevitt's worksite because the Complaint alleges that McDevitt has been stationed there for more than one year.   See 29 C.F.R. § 825.111(a)(3).   Furthermore, AEC notes that the Complaint alleges that McDevitt was responsible for 25 people in the California office and thus it argues that, at best, the Complaint supports the conclusion that the office has just 26 employees, which is not enough to satisfy the 50/75 Rule.   (See Compl. ¶ 13.)

McDevitt contends, however, that, in spite of his two-and-a-half-year temporary assignment in California, the Philadelphia office remained his worksite.   He maintains that the Complaint supports this conclusion because it alleges that he continued to report to the Philadelphia office while he was physically working in California, considered the employment in California to be temporary, remained on the Philadelphia payroll, paid Pennsylvania state taxes,

and maintained a residence in Pennsylvania while working in California.[3]   (See Compl. ¶¶ 14-15, 39-40).)   McDevitt urges us to focus on the allegation that he "reported to" the Philadelphia office and conclude under either the general rule in 29 C.F.R. § 825.111(a) or the rule for employees with no fixed worksite in 29 C.F.R. § 825.111(a)(2) that he has sufficiently alleged that Philadelphia is his worksite.   McDevitt further contends that we can reasonably infer from the Complaint's allegations that the Philadelphia office satisfies the 50/75 Rule because the Complaint alleges that "Defendant employed at least fifty (50) employees at its various office locations," and that "Plaintiff was an eligible employee under the FMLA."   (Id. ¶¶ 38, 41.)

At this early stage in the litigation, without a fully developed factual record and without any definitive legal authority as to how to ascertain McDevitt's worksite under the circumstances presented, we reject AEC's argument that the Complaint only supports the conclusion that the California office was McDevitt's worksite.   While AEC suggests that we analogize McDevitt's situation to that of joint employers, and McDevitt suggests that he is an employee with "no fixed worksite," like a travelling salesman or construction worker, we are not convinced at this stage of the proceedings that McDevitt's situation is properly analogized to either of those scenarios. Instead, we resort to the general rule that an employee's worksite is the office to which the employee reports and therefore conclude that McDevitt has stated a plausible claim that Philadelphia is his worksite because the Complaint alleges that McDevitt's assignment in California was temporary, he reported to the Philadelphia office, he remained on the Philadelphia payroll, and he paid Pennsylvania state taxes.

---

[3] McDevitt also asserts that the Complaint alleges that he received assignments from the Philadelphia office, but there is no such allegation in the Complaint.

We nevertheless conclude that the Complaint does not plausibly allege that McDevitt was an eligible employee because it does not plausibly allege that there were at least 50 employees in the Philadelphia office or within 75 miles of that office at the relevant time.   While McDevitt asserts that we can infer that fact from the allegations that "Defendant employed at least fifty (50) employees at its various office locations," and that "Plaintiff was an eligible employee under the FMLA," we do not find those imprecise allegations to be sufficient to support a plausible inference that the 50/75 Rule is satisfied with respect to the Philadelphia office.   (Compl. ¶¶ 38, 41.) Accordingly, we find that McDevitt has failed to allege sufficient facts to support a conclusion that he is an eligible employee under the FMLA.

### C.   Equitable Estoppel

McDevitt argues in the alternative that, even if we find that the Complaint does not plausibly allege that he is an eligible employee, we should not dismiss his Complaint because he has alleged facts to support a claim of equitable estoppel.   Specifically, McDevitt contends that, even if he was not actually eligible for FMLA leave, AEC led him to believe that he was, and he reasonably relied on this misrepresentation to his detriment.   He argues that the Complaint supports his claim of equitable estoppel in this regard because it alleges that he "reasonably relied on AEC's representation that his anticipated leave for an FMLA-enumerated reason was permissible," and that AEC "assured [him] that he had a job in Philadelphia, leading him to reasonably believe he was granted short-term leave for an FMLA-permitted reason."   (Compl. ¶¶ 18, 27.)   AEC argues, however, that that the Complaint does not state a claim of equitable estoppel because it does not allege that AEC ever affirmatively misrepresented McDevitt's eligibility for FMLA leave.

The Third Circuit has suggested that a valid claim of equitable estoppel may save an FMLA claim that fails to meet the employee eligibility requirements.   Lesse v. Adelphoi Vill., Inc., 516 F. App'x 192, 193 (3d Cir. 2013); see also Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 554 n.2 (6th Cir. 2009) (stating that, for FMLA claims, a court may "use[] its traditional equitable power to prevent [an] employer from making an argument that it can be fairly determined to have forfeited based on its behavior toward an employee" (citation omitted)).   To bring a valid claim of equitable estoppel under the FMLA, the traditional elements of equitable estoppel apply: "'(1) a misrepresentation by another party; (2) which [plaintiff] reasonably relied upon; (3) to [his] detriment.'"   Lesse, 516 F. App'x at 194 (quoting United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987)).

On this issue, we conclude that the Complaint fails to state a cognizable claim based on an equitable estoppel theory because it does not allege that AEC actually misrepresented McDevitt's eligibility for FMLA benefits.   Indeed, the Complaint never alleges that McDevitt and AEC ever discussed the FMLA specifically, much less that AEC ever advised McDevitt that his leave was covered by the Act.   In the absence of any such allegations, we find that the Complaint does not adequately allege the first element of an equitable estoppel claim, which requires a misrepresentation by another party.   See Renart v. Chartwells, 122 F. App'x 559, 561 (3d Cir. 2004) (denying leave to add a claim of equitable estoppel because plaintiff's employer made no statements about FMLA eligibility on which plaintiff relied).

In sum, we find that the Complaint fails to state a plausible claim of interference or retaliation under the FMLA because it fails to allege that the Philadelphia office satisfies the 50/75 Rule and thereby fails to allege facts to support the conclusion that McDevitt is an eligible

employee.   We further find that the Complaint fails to plead a plausible claim of equitable estoppel because it does not allege that AEC misrepresented McDevitt's eligibility for FMLA benefits.   We therefore grant AEC's Motion and dismiss the Complaint for failure to state a claim upon which relief may be granted.

### D.    Leave to Amend

McDevitt has also requested, however, that we grant him leave to amend his Complaint. "[I]f a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless such an amendment would be inequitable or futile."   Phillips v. Cnty. of Allegeny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).   AEC does not contend that amendment of the Complaint in this case would be inequitable, but does contend that amendment would be futile because McDevitt cannot allege in good faith that the Philadelphia office satisfies the 50/75 Rule.

At this point in time, we cannot conclude that amendment is futile.   As noted above, McDevitt has already plausibly alleged that the Philadelphia office was his worksite.   Moreover, McDevitt represented both in his Memorandum of Law in Opposition to Defendant's Motion and at oral argument that, if granted leave to amend, he can allege in good faith that "At all times material hereto, Defendant employed at least fifty (50) employees at its Philadelphia, Pennsylvania office location, or within seventy-five (75) miles thereof, for each working day in each of twenty (20) or more calendar days in the current or preceding year."   (Pl.'s Mem. at 9.) Accordingly, it appears that McDevitt will be able to cure his pleading deficiency with respect to his FMLA interference and retaliation claims.   We therefore give McDevitt leave to amend.

**IV.   CONCLUSION**

For the foregoing reasons, we grant AEC's Motion to Dismiss, because McDevitt has neither sufficiently alleged facts to support the conclusion that he is an "eligible employee" under the FMLA, nor sufficiently alleged facts to support a claim of equitable estoppel.   However, we also grant Plaintiff's request for leave to amend because we are not convinced that amendment would be futile.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____

John R. Padova, J.